Oral argument not to exceed 15 minutes per side. Nanette Cortese for the appellant. Good morning, your honors. May it please the court. Nanette Cortese appearing on behalf of appellant Neileigh Regets, individually and as the personal representative of the estate of Thomas Steiner. Your honors, it should be a matter of grave concern that Neileigh Regets was arrested, her home searched, her husband's hotel room searched, and her husband's vital medication seized. Based, at the end of the day, solely upon the word of a former ex-boyfriend of Neileigh Regets, who in the past had in fact been arrested for physically assaulting Ms. Regets. These facts should give us pause that someone with an axe to grind, a motive for revenge, can go to the police, present accusations that a crime is going to be committed, and based, at the end of the day, solely upon those facts should ultimately arrests and detentions be carried out. Here's what I'm trying to figure out. Certainly there are situations where a person makes a claim, let's assume that they're anonymous and we have all the case law dealing with that, where you wonder whether really there was enough. But here the person is known, he shows up, they take him to the prosecutor, they actually put him under oath, and then they take that to a neutral magistrate and they get a magistrate's permission. So how on earth can there be liability, not with respect to confiscating the drugs, we'll get to that separately, how on earth can you say there wasn't probable cause? Because particularly even under the case law, relied upon by defendants. At the end of the day, obviously probable cause, it is a factual inquiry to be made by the officers, it is a factual inquiry to be made looking at the facts available. However, even under the cases relied upon by defendants, for example, your honor, the Ehlers case, A-H-L-E-R-S, in that particular case where the Sixth Circuit did find that probable cause had been established, it was a situation where an arrestee had accused a corrections officer of sexually assaulting her. In that case, however, the officers did not simply accept the word of the arrestee that the assault had occurred. The officers undertook an additional investigation, including recording a phone call and attempting to get corroborating information from a cellmate of the prisoner making the accusation. The reason, your honor, why even in this context where Christopher Kish, as opposed to a confidential informant, was known to the officers, was known, he was not a confidential undisclosed informant, even though his name was known, in this particular case, given the fact that the only information the officers were going by was information provided by Mr. Kish. What's your best case that essentially says there was an insufficient investigation here? Our best case, your honor, I believe that the strongest case we have and our best and most closely analogous case, your honor, was the case of Radvansky that we cited in our reply brief. I believe that Radvansky, and I will provide the court in the next moment with a cite for the case for Radvansky, I believe that Radvansky is the most closely analogous case. The citation is Radvansky v. City of Olmstead Falls. Citation is 395 F. 3rd 291. In that case, there was a landlord who was having a dispute with a tenant. The landlord called the police and told the police that the tenant was, or that someone was trying to break back into the house. The police, based solely upon what they were told by this landlord, proceeded to the residents and proceeded to arrest Radvansky. In that case, the 6th Circuit, in finding that qualified immunity was not appropriate on the issue of probable cause to the officers. In that case, the 6th Circuit held that the officers, by simply accepting the word of the landlord, who was in a dispute with his tenant, that a crime was being convicted without carrying out any other independent investigation. And without considering the exculpatory evidence presented by the tenant. When the police arrived, the tenant indicated that he had a driver's license that would have shown that he resided at that location. There was also a note left on the door, etc. In that case, the 6th Circuit did hold that the actions in the officers, in simply relying upon the word of the landlord, that a crime was being committed and without conducting additional investigation and without considering exculpatory evidence, was not sufficient to establish a good faith belief in probable cause. I would direct this honorable court, in our reply brief on page 9, recite the Radvansky decision, at page 304 of the decision, where the 6th Circuit states, Rosemark's word alone, the full quote is, quote, construing the evidence in the light most favorable to Radvansky, Rosemark's word alone was insufficient to establish probable cause of criminal wrongdoing. Does it make any difference that in our case, the informant was put under oath and repeated the story? I don't believe that the mere fact of placing someone under oath, where, again, looking at the facts of this case, there is knowledge that he is a former boyfriend of Neely Regans. Minimal investigation would have revealed that he had previously been arrested for assaulting Ms. Regans. That in this case, when you are dealing with someone who has motive and background and relationship and incentive to attack someone and cause them harm and to make up false allegations against someone, the mere fact that you put that person under oath, I would submit, does not, at that point, end the inquiry of whether the officers had probable cause. In Rodriguez, did they discuss the case with the prosecutor? I'm sorry, your honor, what was the question? In Rodriguez, or whatever the name of that case is, did they discuss the case with the prosecutor? In Radvansky? In Radvansky. Hold on one moment, your honor, and I will... All this happened outside the door of the guy's apartment when they were called there and hauled him away, if I understand it correctly. Yes, I do not believe... So here we have a situation where the guy comes in, the police aren't sure what to do, they go to the prosecutor, that's a good thing, right? Absolutely. Prosecutor puts him under oath to see if his story holds up, that's a good thing, right? Again, yes. They then prepare an affidavit in support of a search warrant, that's a good thing. That is a step they should follow, yes. No claim that they made a false statement in that? No claim that the officers made any false statement. And they get a search warrant. So, you really think that the case you're citing is analogous to this case? Yes, because again, that deals with, and that's the somewhat separate issue of the search warrant. In the context of the arrest and detention of Neely Regatz, the search warrant, the warrant that was obtained, the consultation with the magistrate, the obtaining the warrant from the magistrate, that warrant was for the search. But they arrest her in conjunction with the execution of the search warrant, right? Although... I get all that. But they had a search warrant for which a neutral magistrate has concluded, correctly or incorrectly in hindsight, that there was probable cause to believe that a crime had been committed and that there would be evidence found of that crime at the place where she lived, right? Yes, they had a search warrant. So in the face of that, they still had to do more investigation before they could arrest her. Yes, I would say in the face of that, and when they went to the magistrate for the search warrant, when they went to the prosecutor, all along this chain, if you trace it back, if you trace back from the going to the house, the arresting Neely Regatz, which occurred prior to any search, one of the first things they do, I understand, from the facts in this case, they arrive at the house, one of the first things they do is to place Neely Regatz under arrest before searching the house, before attempting to corroborate if a search of the house would have revealed the presence of the pills that Kish described, before confirming if any search would have led to evidence of criminal wrongdoing on the part of Neely Regatz, tracing that back, before going to the magistrate, before consulting with the prosecutor, if we look at the bottom of this pyramid, if we ask, what is the foundation upon which all of this rests? The foundation upon which everything in this case rests is the word of Christopher Kish, a former boyfriend of Neely Regatz. There was no other interviews conducted, there was no investigation into Mr. Kish's background, there was no attempt to independently corroborate whether anything, any of this story that Mr. Kish was presenting was in any way... and, gee, the search didn't find anything, so at that point they should have let her go. They do the search, they find a quantity of pills, which is basically what Kish has described, 25 different prescription bottles, and then, I'm not sure what significance this had, they also find suspected marijuana and drug paraphernalia. So, not a real shock that they didn't let her go after the search, is there? Well, again, Your Honor, my understanding is the drugs, that there were prescriptions for those drugs, and even if they didn't let her go at that point, because, again, we maintain there was no probable cause for the execution of the arrest to begin with, or even the search to begin with, based only on the uncorroborated word of Christopher Kish, we have the situation then, Judge, Your Honor, where they do go and talk to Thomas Steiner, and Thomas Steiner provides exculpatory evidence where Thomas Steiner states that there was no plot, there was no plan, and, Your Honor, if I am reading my timer correctly, it does appear that I'm out of time. Yes, it does. Thank you very much. May I ask you just one quick, I think a quick question, Judge? Of course, Your Honor. In regard to municipal liability, you haven't talked about that, but what policy or custom would you allege is violated here? I mean, are you still pursuing that claim, the one against the municipality itself? We did argue, Your Honor, and we provided an affidavit in the lower court of our police expert, Mr. Katsaris, where, under oath and in the form of an affidavit, he opined that the municipal liability was based upon a failure to adequately train its officers regarding what constituted probable cause and what officers would need to do to establish probable cause prior to executing an arrest and a search. Okay, and you were making that argument here on appeal? Yes, we did, Your Honor. That they failed to train them. Yes, we argued that the affidavit established genuine issues of material effect. Thank you very much, Your Honors. Thank you, Counsel. Good morning. May it please the Court. David Krauss on behalf of the appellees. Let me first address the Radvansky issue that the plaintiffs brought up here. The crucial item, and the one that they don't seem to concentrate on, is that there was no information provided to the Plymouth Police of any acts to grind by Mr. Kish. Mr. Kish came in on his own, and I think it's interesting to note that they took a statement from him, and then the next day they took him to the prosecutor. This was not something done in a rush. This was something done deliberately to make sure that all policies and procedures were followed. The Radvansky case, and at page 309 of the opinion, states, finally, unlike Ehlers, this is not a situation where officers failed to collect exculpatory evidence, but rather they already had both knowledge and possession of such evidence at the time of the arrest. That's the distinction in Radvansky. When the officers in Radvansky confronted the plaintiff, they were aware of the conflict between the parties. That is not true in this case, and that is the distinction that must be made. That is crucial to the holding in Radvansky. So you're saying if they know of this acts to grind, they've got to investigate further. You're comfortable with that? I'm not sure that if, I think if they have, if there's evidence of something, but there was no evidence here. We know she's going to stand back up and she's going to say, well, they didn't know that Kish had an acts to grind, but they should have investigated Kish further. So you might as well respond to that now because you know that's what she's going to say. I don't think there's any support in the law for that. I think that when they have a situation where someone comes into them, they take a statement, they go down and have a prosecutor put this person under oath, that therefore they have now done what needs to be done. Don't think that they have to go further and make an investigation. All they're establishing here is probable cause. They're not establishing the evidence that needs to be provided to obtain a conviction. This is the first step, and they took every step that was appropriate. And I think the Messerschmitt case, which is probably the closest to this matter, the qualified immunity protects all but plainly incompetent or those who knowingly violate the law. And obviously that didn't occur in this case. They did exactly, they followed the law. They were not, and they got the impartial magistrate to have the search warrant, and that was the appropriate way, and they had established probable cause. At least with respect to the search, why aren't you arguing Leon? We were looking at different issues in this case, and we felt that the Messerschmitt case was closer. I think that all of the case law supports the position of what was properly and substantially done in this case. I don't, I mean, I imagine you can, there are many other cases to argue, but we felt what we had was sufficient. Let me address one more item, and that is the alleged exculpatory evidence that they claim that they located or that when Officer Cox spoke with Mr. Steiner. At that point, Officer Cox has two statements. He has one taken under oath of Mr. Kish, of what Mr. Kish's version of. He has a statement by Mr. Steiner, the acknowledged husband of the plaintiff, not taken under oath as to what he says. I don't believe that that becomes exculpatory. I believe that the probable cause still existed in this case to establish that the plaintiff had committed a crime. Therefore. You couldn't assist him to commit suicide if he wasn't going to do it. That is a question of fact for a trier of fact, not to establish probable cause. Because the probable cause was established by the documentation of Mr. Kish. And that was a statement made under oath for Mr. Steiner. At the time they talked to him, let's assume that for a second that he did plan to kill himself. You're referring to Mr. Steiner? Mr. Steiner. Let's assume that he did plan to kill himself. That's sort of the whole theory here. So when they call him up to say, where are you? What are you doing? Did the police tell him or did he otherwise know that they had already arrested his wife? I'm trying to recall that. I don't recall offhand, I'll be honest. It seems to me that it might be relevant to the question of whether they believed Steiner. If all of a sudden the police are supposedly on to this plot, if there was one, and he did want to take his own life, knowing that they had arrested his wife, it seems to me he's pretty unlikely to say, yeah, I plan to kill myself and she's going to help me do it. It's his wife. He may well have known at that point by attempting, he couldn't contact her at least, and he doesn't want to implicate. You don't know if the record discloses what the police told him when they talked to him. You don't know. I can't recall at this time. That was Officer Cox's phone. That's fine. Let me simply state several items. I believe that there are a number of claims in this case. As Judge Oliver pointed out, there was the claim against the municipality, there's a conspiracy claim, there's a deliberate indifference claim, there's an intentional infliction of emotional distress claim. I do not believe that the plaintiffs or the appellants have brought forth any evidence in support of any of those claims. I also believe that the search of Mr. Steiner's room was appropriate based on the search warrant and that I think in that case Officer Grabowski acted absolutely appropriately given that he understood what was there. There were the pills that were possibly going to be used to assist in the suicide and then there were the pills for daily use. If he had taken all the pills for daily use, then I would agree there was a problem. But he left the pills for daily use. There was sufficient amount which was confirmed through the conversation with Mr. Steiner. If they're going to claim that Mr. Steiner should be believed, he has to be believed for everything. And in that case he said, look, I have enough pills. There was also this question of Mr. Steiner being confined to his room and therefore would not have been able to get out and get pills. Obviously that's incorrect because as a matter of fact when the search warrant was executed, Mr. Steiner wasn't there giving evidence that he certainly had the ability to get out of his room and do other tasks should he wish to do them. I believe that the opinion and order from the court below was well-reasoned and proper and I would urge affirmance. Are there any further questions? There are not. Thank you, Counselor. Thank you very much. You did not advise us that you were saving any time for rebuttal, and it sure looked like you took your entire 15 minutes, but we'll give you a couple minutes. Okay, and thank you, Your Honors. I apologize. I let the clerk know, but I apologize for not letting the court know that was an oversight on my part. Very briefly, and thank you for the court's indulgence, I would simply say addressing the issue of whether or not Christopher Kish had an ax to grind and did the police know that, when did they know that. Certainly we know from Mr. Kish's statement he acknowledged that he had a son with Neely Regitz. Certainly there was information provided to the police that they had formerly been in a relationship. That certainly should have raised some red flags with the police. Wait a minute. They also knew that he was at the house because he was babysitting for his child, right? Well, he claimed he was there. I don't think he said in his statement that he was babysitting. What he said was he was visiting his son. Okay. He visited. The point is, it's not like he came in and stormed the house by gunpoint. She apparently allowed him in the house to visit because she had a child with this guy. I'm just trying to figure out how on earth that could arguably, in your mind, put the police on notice that there's something suspect here. I would argue, Your Honor, that with the police being confronted with someone who had been in a prior romantic relationship with someone, when someone comes to the police with a past history with someone, a past romantic relationship, business dealings, whatever, a past relationship that's gone sour, it certainly seems... But you're assuming they knew all of that, but you're also arguing they should have investigated him to find out whether that was the case. What's your best evidence that at the time he made the sworn statement to them, which they then took to the magistrate, what's your best evidence that they knew of the rocky past between these two people? The only evidence in the statement of the connection between them is that he references that they have a son together. But again, it's certainly our argument as well. Counsel for defendants has talked about the fact that they had deliberate speed in this case. They didn't just rush to the house. They did go to a magistrate. They did do certain things. It's our argument that had they undertaken additional investigation, as pointed out, had they taken additional investigation, they would have discovered this very rocky relationship. So they would have said to him, Well, we see you have a rocky relationship with this woman. Are you lying to us under oath? I think it certainly would have, again, as in the Radvansky case, it imposed an obligation upon them, and I think this is consistent with the jurisprudence. There's an obligation to do more than just take someone's word who comes into a station and says someone that I used to have a relationship with is going to commit a crime. There needs to be something more than that. Otherwise, there's a tremendous risk to people that someone, an ex-husband, an ex-business, an ex-boyfriend, an ex-girlfriend, ex-relationship can walk into a police department and accuse you of a crime, and next thing you know, you're being placed under arrest, your premise is searched, and your medication is seized. And with that, Your Honors, thank you very much for your time this afternoon. Thank you, Counsel. The case will be submitted.